Joseph Edward WHITE, Appellant,

v.

The STATE of Texas, State.

Nos. 2–95–322–CR, 2–95–323–CR, 2–95–324–CR.

Court of Appeals of Texas, Fort Worth.

Nov. 21, 1996.

---

Robert Ford, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Betty Marshall, Charles Mallin, Assistant Chiefs of the Appellate Section, Steven W. Conder, James Cook, Karen Lynn, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before DAY, CHUCK MILLER (Sitting by Assignment), and SHIRLEY W. BUTTS, (Retired), (Sitting by Assignment), JJ.

## OPINION

SHIRLEY W. BUTTS, Justice.

Joseph Edward White appeals his convictions for aggravated robbery, aggravated sexual assault, and aggravated kidnapping. After finding appellant guilty of each offense, the jury assessed the punishments at imprisonment for 50 years, 90 years, and 75 years respectively.

In his sole point of error appellant contends that the trial court erred in failing to declare a mistrial after the State's improper jury argument at the guilt/innocence phase of the trial. The sole point of error is overruled and the judgments are affirmed.

Although the sufficiency of the evidence is not challenged, a summary of the evidence aids in understanding the jury arguments. On January 29, 1994 appellant got married, and appellant's mother had a reception. That evening appellant and some celebrants decided to go to a club in Colleyville. Appellant drove his mother's van; his brother and Getzell Deshea Murrell, the co-defendant, accompanied him. Other party-goers followed in a second car. Appellant and the two with him decided to get some money by robbing someone. They stopped at an apartment complex. Appellant's brother went to the other car and told the occupants they were going to "jack" someone. Appellant handed the co-defendant a .38 semi-automatic.

About that time L.E., the victim and complainant, arrived home from work and drove into the complex's parking lot. She saw the van in the road and several men talking with the driver. Leaving her Mitsubishi Eclipse, she walked toward her apartment but was grabbed from behind by the co-defendant.

He threatened to kill her, and appellant took her jewelry and car keys. Appellant instructed L.E. to get into the back seat of the Eclipse. The co-defendant got in with her and told L.E. to duck down and not look up. Appellant's brother did not go with them.

Appellant found L.E.'s ATM card and she told him her PIN number. Appellant drove to the Bank of North Texas in Fort Worth and had L.E. stand between the bucket seats and lean across to the ATM machine. She withdrew $300 and gave it to appellant. Appellant began fondling L.E. and ordered her to remove her pants and panties and get into the front seat. He forced her to perform oral sex. The co-defendant had her perform oral sex and then had vaginal intercourse.

Appellant drove to a wooded place where, according to co-defendant's testimony, he had vaginal intercourse with L.E. Both men had sex with her on the hood of the car. Appellant then ordered L.E. to run up a hill, and she did. The co-defendant threw her pants out the window as they drove away. After purchasing lighter fluid, appellant and the co-defendant burned the Eclipse. The two then returned to the van and went to the club.

State's witness Sedric Neal testified that appellant told him what he and the co-defendant had done, which included the robbery, kidnapping, and sexual assaults.

The victim, L.E., underwent a sexual assault examination that night at the hospital. Besides bruises and scrapes on her, the doctor found a clear discharge of semen and sent samples to the crime lab. Her white pants with her panties inside one leg were recovered and sent to the crime lab.

A forensic serologist with the Fort Worth Police conducted tests on the samples and found the positive presence of semen. The serologist, Aliece Watts, testified that she conducted the Absorption Inhibition Test which revealed both the A and H antigen indicating someone's fluids other than L.E.'s. L.E. is a non-secretor.

From appellant's blood sample, Watts determined that appellant produced both the A and H antigens, but the co-defendant could produce only the H antigen, and the brother is a non-secretor. The opinion of the expert serologist was that the semen on the white pants was not only that of the co-defendant because he could produce only the H antigen. The defense theory was that the blood samples had been inadvertently switched. When questioned about a possible mix-up of the blood samples of appellant and the co-defendant, Watts denied there was a mix-up.

Constance Patton, a forensic serologist with the Medical Examiner's Office, tested blood from appellant, L.E., and three others as well as samples from the examination of L.E. and cuttings from her white pants. She found appellant's DNA matched the DNA on the white pants. She further found there was no DNA match as to the co-defendant, appellant's brother, or L.E.'s boyfriend. She concluded the semen stains on the white pants could only have come from appellant. Patton denied any mix-up.

### The Jury Argument

In jury argument the State emphasized that the serology and DNA tests results proved that appellant committed the offenses. The defensive theory was that appellant did not commit the offenses; rather, the co-defendant and another unknown person committed the offenses. There was a security picture of the co-defendant as he purchased the lighter fluid for the fire, and appellant was not shown there or in the ATM picture. It was argued, "All you've got in this case is coconspirators talking.... There's nothing connecting [appellant] with this crime." It was further argued that L.E. did not remember having vaginal sex with the driver [appellant] except on the hood of the car. The pants had been used to wipe her vaginal area and thrown down inside the car; thus, the argument went, there was no evidence showing how appellant's semen got on the white pants. Further, the oral and vaginal swabs from L.E.'s examination failed to match appellant's DNA. It was also argued by defense counsel:

> You heard the [defense] expert on DNA get up here.... He said that to him it looks like there was a mix-up on the blood. [There was a 17 day difference between

appellant's and Murrell's vials of blood being labeled].

Ladies and gentlemen, that's not where the mistake occurred. The mistake could have occurred whenever they were transferring the blood into another vial to be put on the gels. It could have also been accidentally switched when they were putting it on the little pass. All you had to do was just barely scoot it over on one of those strands and it would have come up under somebody else's name.

The defensive argument concluded that the evidence did not prove who was in the car. "[I]t could have been the little brother in the car; it could have been A.J. Anderson. We don't know who it was. There's no reliable evidence to tell us who was in that car." The defense argument continued:

We submit that if this man's DNA were not on that [sic] jeans, then something went wrong with the test.

... [Appellant] doesn't have to get up here and elicit testimony from people that took the test. Where exactly could you do that? It would be impossible for any defendant to do that because nobody was there and mistakes get made. It happens and it's unfortunate, but it sure explains what went on here.

We submit that's not just a reasonable doubt. We submit that's a grave doubt. There is grave doubt about whether or not that DNA is [appellant's].

. . . .

We do not need to destroy the entire case of the prosecutor. We do not need to prove how the blood got mixed up. We do not need to prove why those guys lied. Do not shift the burden on the Defendant.

Defense counsel argued for acquittal of all charges based on lack of evidence.

The State argued that it had become a trial of the serologists, whether they "fouled up their testing." It was argued:

But the defense would have you think that on this time, [Aliece Watts] made a horrendous blunder and got the wrong person's name on this vial, the name of a person whose blood she wouldn't draw for another week and a half after taking the blood of Deshea Murrell.

Or they would have you think that while she's preparing her tests, that somehow, somehow she just loses [the blood] and makes a horrendous blunder and puts [the blood] in the tube of somebody else and somehow gets the names exactly switched.

. . . .

... [I]f Aliece didn't get things messed up enough, then Connie Patton must have come in and switched everything around. . . . Even though she has been trained and even though she has done many of these DNA tests.

. . . .

We know that there's not three attackers in the car. There's only two people in the car. We can't say that it's Deshea Murrell, Nathaniel Owens, and Sedric Neal all in the car. [Owens and Neal had been eliminated by the evidence.] That doesn't fit at all.

Joseph White's the one who's unaccounted for. He's in the van. . . . The van leaves. Then Murrell and White are left behind.

*And finally when it comes time to draw Mr. White's blood for testing, ask yourself why it takes the special response team to get him out of his cell? And ask yourself if there's really a question, really, really a question about whether or not these blood samples have gotten mixed? Why hasn't the defense with its power of subpoena gotten a serologist to repeat those same tests to show you that those samples are mixed up?* [Emphasis added.]

The emphasized jury argument, above, is assigned as reversible error on appeal. Defense counsel objected that the State was improperly placing the burden of proof on appellant. The trial court sustained the objection. Defense counsel then requested an instruction that the jury disregard the comment. The trial court so instructed the jury.

The State explained to the trial court that the reference was to the defense counsel's ability to bring in their own evidence and that it had not been brought. The trial court stated the objection had been sustained and

the curative instruction given to the jury. In addition the trial court stated, "They will disregard the last comment."

■ No further relief was requested by defense counsel. In order to preserve jury argument error for appellate review, the defendant must make an objection, request an instruction to disregard, and make a motion for mistrial after the instruction to disregard is given. *Cook v. State,* 858 S.W.2d 467, 473 (Tex.Crim.App.1993). Because appellant received all the relief requested and failed to move for mistrial, no adverse ruling was obtained, and error has not been preserved. *Id.*

■ Even if alleged error had been preserved, that argument would fail. A proper jury argument may be made in response to the defendant's argument. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988); *Alejandro v. State,* 493 S.W.2d 230, 231–32 (Tex.Crim.App.1973); *Rasmussen v. State,* 822 S.W.2d 707, 711 (Tex.App.—Fort Worth 1991, pet. ref'd). In examining the challenge to the jury argument, we will consider the remark in the context in which it appears. *Gaddis,* 753 S.W.2d at 398.

The issue raised by appellant at trial through direct testimony of his own expert, Richard Benjamin, and through cross-examination of the State's witnesses, serologists Watts and Patton, was that the appellant's and the co-defendant's blood samples were mixed up or switched. The defense counsel's jury argument centered on the alleged mix-up. The State then responded to that argument. *See Nethery v. State,* 692 S.W.2d 686, 703 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986).

■ We agree that the State's argument was invited, but even if it could be construed as an uninvited comment, we agree that any error was cured. The State's comment was not so prejudicial that it could not be cured by the instructions from the trial court to the jury. *Long v. State,* 823 S.W.2d 259, 269 (Tex.Crim.App.1991), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992).

Article 38.08 of the Code of Criminal Procedure gives a defendant in a criminal case the right to testify in his own behalf, but if he does not testify, this cannot be taken as a circumstance against him, "nor shall the same be alluded to or commented on by counsel in the cause." TEX.CODE CRIM.PROC. ANN. art. 38.08 (Vernon 1979); *see* TEX. CONST. art. I, § 10. In order to constitute a violation of the statute, as well as the privilege against self-incrimination, the language must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Angel v. State,* 627 S.W.2d 424, 426 (Tex.Crim.App. [Panel Op.] 1982). The comment must be more than an implied or indirect allusion to defendant's silence. *Id.* If the prosecutor's remark calls the jury's attention to the absence of evidence that could only be supplied by the defendant himself, then the comment is improper. *Id.*

■ In this case, the State referred in argument to the right of appellant to present evidence from an expert serologist to conduct the same tests to show there was a mix-up. This was not an allusion to appellant's failure to testify since the evidence would have come from another source. *See Green v. State,* 698 S.W.2d 776, 781 (Tex.App.—Fort Worth 1985, pet. ref'd).

■ Based on the above noted defense evidence of possible blood tests mix-ups, defense counsel argued forcefully and extensively on that contradictory hypothesis. The State responded to that argument. Even had alleged error of the responsive argument been preserved, the response did not improperly shift the burden of proof to appellant. The sole point of error is overruled.

The judgments are affirmed.