COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-01-520-CR
 
 
JULIA 
JOHNSON HORN                                                         APPELLANT
 
 
V.
 
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 355TH DISTRICT COURT OF HOOD COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. 
Introduction
 
        Appellant 
Julia Johnson Horn appeals her convictions for delivery of methamphetamine, 
possession of methamphetamine, and delivery of marijuana. A jury found Horn 
guilty and assessed her punishment at confinement for life for each of the 
methamphetamine convictions and at twenty years’ confinement for the marijuana 
conviction. In four points, she contends that (1) the trial court erred when it 
denied her motion to suppress and, in the alternative, by finding that she gave 
consent to the police to search her residence; (2) the trial court improperly 
denied her motion for continuance based upon a Brady[2]  
violation; (3) the evidence is legally insufficient to support her convictions; 
and (4) the prosecutor made an improper argument in final argument that shifted 
the burden of proof to her.  We will affirm.
II. 
Factual and Procedural Background
        In 
November 2000, the S.T.O.P. Narcotics Task Force arranged an undercover 
narcotics buy from Horn. Wayne Rogers, an investigator with the task force, 
enlisted the help of Louie Cooper, a cooperating individual and Horn’s 
neighbor. Cooper called Horn to prearrange a purchase of marijuana and crystal 
methamphetamine.  Rogers met with Cooper, searched Cooper’s vehicle and 
his person, provided Cooper with marked currency for the drug purchase, and 
fitted Cooper with an audio recording device.[3]  
Afterwards, they drove to Cooper’s residence on Whippoorwill Drive in Granbury 
in Hood County and prepared to start the undercover operation.
        Cooper 
drove across the street to Horn’s driveway and went to her door. Cooper then 
returned to his home and told Rogers that Horn would not have the drugs for 
approximately one hour.  Cooper and Rogers left and went to McKelvey’s 
Marina together while six other officers maintained surveillance on Horn’s 
residence and the area around it. Cooper and Rogers returned to Cooper’s 
residence approximately one hour later, and Cooper went back to Horn’s 
residence to purchase the drugs.  Cooper purchased a quantity of 
methamphetamine that was later admitted at trial as State’s Exhibit 1, but 
Horn said she did not have the marijuana yet.  Following the partial 
purchase, Cooper came straight back to his house, where Rogers was videotaping 
Cooper’s travel to and from Horn’s residence, and gave the drugs to Rogers.  
About ten minutes later, Horn drove to Cooper’s residence, and Cooper went 
outside and retrieved a bag containing a green, leafy substance from Horn, 
admitted at trial as State’s Exhibit 4.  Cooper gave the bag to Rogers 
when he reentered the house; Rogers was trying to maintain video contact with 
Horn until she got out of sight.  As soon as Horn returned to her driveway, 
Rogers notified the agents who were on surveillance at Horn’s residence that 
Rogers and Cooper’s part of the operation was complete.
        At 
that point, Cooper and Rogers left the area in Cooper’s vehicle, and 
Investigator Goetz[4] and other task force officers 
met Horn in her driveway.  Goetz identified himself and the agency he was 
with and told Horn he was investigating her activities with regard to the 
distribution of narcotics.  He asked Horn for permission to search her 
vehicle and her home for any drug paraphernalia or contraband, and she gave both 
oral and written consent; Rogers did not mention that they were attempting to 
get a search warrant even before Horn gave her consent.  Goetz’s search 
of Horn’s purse revealed $1,140 in $20 bills, including some of the marked 
bills used by Cooper to purchase drugs.  At that point, Goetz read Horn the 
Miranda warnings and began recording his conversation with her.  
During the conversation, Horn acknowledged that she had more illegal narcotics 
in her home and asked Goetz about making a deal, which Goetz perceived as 
further acknowledgment by Horn that she had committed the offense.  While a 
search warrant was being procured, other officers made a protective sweep of 
Horn’s home.
        Once 
the search warrant was obtained, Rogers conducted a search and seized particular 
evidence in Horn’s residence pursuant to the search warrant and Horn’s 
written consent.  Rogers seized three containers of drugs from the kitchen, 
which were admitted into evidence at trial as State’s Exhibits 5, 6, and 7.  
A chemist for the Texas Department of Public Safety in the Garland Crime 
Laboratory testified at trial that he analyzed State’s Exhibits 1, 4, 5, 6, 
and 7 and that State’s Exhibits 1, 5, and 6 contained methamphetamine, while 
State’s Exhibits 4 and 7 contained marijuana.  At a pretrial hearing on 
Horn’s motion to suppress and again at trial, the trial court declared the 
search warrant invalid because it was not properly issued by a judge who is a 
licensed attorney but found that the search was properly conducted pursuant to 
Horn’s consent.  A jury convicted Horn upon the above evidence for 
delivery of methamphetamine, possession of methamphetamine, and delivery of 
marijuana.  This appeal followed.
III. 
Effective Consent Given
        In 
her first point, Horn argues that the trial court erred when it denied her 
motion to suppress and, in the alternative, when it found that she gave consent 
to the police to search her residence. Specifically, Horn contends that her 
consent was involuntary due to duress and coercion from the officers, that the 
consent form was vague, and that consent is not relevant when a search is 
performed pursuant to a search warrant.  Based upon these contentions, Horn 
asserts that she was harmed.  The State responds that the trial court 
properly denied Horn’s motion to suppress because the State proved by clear 
and convincing evidence that Horn freely and voluntarily consented to the 
search.
        A. 
Standard of Review
        At 
a suppression hearing, the trial judge is the sole trier of fact and judge of 
the credibility of the witnesses and the weight to be given their testimony. State 
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Romero v. State, 
800 S.W.2d 539, 543 (Tex. Crim. App. 1990); State v. Hunter, 102 S.W.3d 
306, 309 (Tex. App.—Fort Worth 2003, no pet.).  Thus, the trial court may 
disbelieve any portion of a witness’s testimony, even if the testimony is 
uncontroverted. Ross, 32 S.W.3d at 855; Hunter, 102 S.W.3d at 309.
        In 
reviewing the trial court’s decision, an appellate court does not engage in 
its own factual review. Romero, 800 S.W.2d at 543; Hunter, 102 
S.W.3d at 309.  Instead, we give almost total deference to the trial 
court’s rulings on (1) questions of historical fact and (2) 
application-of-law-to-fact questions that turn on an evaluation of credibility 
and demeanor.  Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. 
App. 2002); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Hunter, 
102 S.W.3d at 309.  In the absence of explicit findings, we assume that the 
trial court made whatever appropriate implicit findings the record supports.  
Ross, 32 S.W.3d at 855-56; Carmouche v. State, 10 S.W.3d 323, 
327-28 (Tex. Crim. App. 2000); Hunter, 102 S.W.3d at 309.  The 
voluntariness-of-consent issue is a mixed question of law and fact.  See 
Vargas v. State, 18 S.W.3d 247, 253 (Tex. App.—Waco 2000, pet. ref’d); Hunter, 
102 S.W.3d at 309.  Because voluntariness is dependent on whether any 
duress or coercion was placed on the person giving the consent, we must conduct 
a de novo review—after giving deference to the historical facts—of whether 
the State proved by clear and convincing evidence that the consent to search was 
voluntary.  Vargas, 18 S.W.3d at 253.  Moreover, if the trial 
judge’s decision is correct on any theory of law applicable to the case, we 
will sustain the trial judge’s decision.  Ross, 32 S.W.3d at 
855-56; Hunter, 102 S.W.3d at 309.
        Here, 
at the suppression hearing, the State presented the following evidence: the 
testimony of officers Rogers and Goetz; the search warrant; and Horn’s written 
consent.  Horn presented the testimony of Paula Parker, Horn’s employee 
who described the search the police performed at the hamburger stand,[5] and the testimony of Ron Pendergraft, a private 
investigator who described the visibility from Cooper’s house and discussed 
the reliability that is required of a cooperating individual. Additionally, Horn 
attempted to impeach Rogers’s testimony.  Based on this evidence, the 
trial court found that the search warrant was not properly issued but that Horn 
voluntarily consented to a search of her premises.  Consequently, the trial 
court denied Horn’s motion to suppress.
        B. Voluntariness of Horn’s Consent
        To 
show that the search was made with the property owner’s consent and thus 
trigger the consent exception to the warrant requirement, the State must prove 
by clear and convincing evidence, based on the totality of the circumstances, 
that the defendant gave consent freely and voluntarily.[6]  
Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000); Meeks v. 
State, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985); Hunter, 102 S.W.3d 
at 310.  If consent is obtained through duress or coercion, whether actual 
or implied, that consent is not voluntary. Schneckloth v. Bustamonte, 412 
U.S. 218, 248-49, 93 S. Ct. 2041, 2058-59 (1973); Allridge v. State, 850 
S.W.2d 471, 493 (Tex. Crim. App. 1991), cert. denied, 510 U.S. 831 
(1993); Hunter, 102 S.W.3d at 310.
        Some 
relevant factors in determining the voluntariness-of-consent issue are the youth 
of the accused, the education of the accused, the intelligence of the accused, 
the constitutional advice given to the accused, the length of the detention, the 
repetitiveness of the questioning, and the use of physical punishment.  Reasor, 
12 S.W.3d at 818; Hunter, 102 S.W.3d at 311.  Additionally, 
testimony by law enforcement officers that no coercion was involved in obtaining 
the consent is evidence of the consent’s voluntary nature. Martinez v. 
State, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000); Hunter, 102 S.W.3d 
at 311.  A police officer’s failure to inform the accused that he can 
refuse consent is a factor to consider in determining the voluntariness of 
consent; however, the absence of such information does not automatically render 
the accused’s consent involuntary. Johnson, 68 S.W.3d at 653; Hunter, 
102 S.W.3d at 311.  Nor is consent rendered involuntary merely because the 
accused is under arrest. Johnson, 68 S.W.3d at 653; Hunter, 102 
S.W.3d at 311.  By the same token, consent is not established by showing no 
more than acquiescence to a claim of lawful authority. Carmouche, 10 
S.W.3d at 331; Hunter, 102 S.W.3d at 311.
        Horn’s 
motion to suppress challenged the warrantless[7] 
search of her premises under the First, Fourth, Fifth, Sixth, Ninth, and 
Fourteenth Amendments to the United States Constitution and under Article I, 
Sections 9, 10, and 19 of the Texas Constitution. U.S. Const. amends. I, IV, V, VI, IX, XIV; Tex. Const. art. I, §§ 9, 10, 19.  Horn 
raised the validity of the search under the Texas Constitution, so the State was 
required to prove the voluntariness of Horn’s consent by clear and convincing 
evidence. See Carmouche, 10 S.W.3d at 331; Hunter, 102 S.W.3d at 
311.
        At 
the suppression hearing, the State questioned Officer Goetz extensively 
concerning Horn’s consent to the search.  Goetz explained that 
immediately after he met with Horn and told her who he was and his purpose for 
being there, he asked her for permission to look through her personal 
belongings, including those in her car and her house.  He told her that she 
was not under arrest at that point. Shortly thereafter Horn signed a written 
consent to search form.  Goetz testified that he did not threaten her to 
sign the form, did not make any promises to her, did not coerce her in any way, 
and did not mention the search warrant prior to obtaining her consent; Goetz 
also confirmed that the consent form informed the signator of the right to 
refuse to authorize the search. Goetz also testified that after he found the 
marked bills in Horn’s purse, he gave her the Miranda warnings.
        The 
circumstances leading up to the search show that approximately six to eight 
officers approached Horn in her driveway when she returned from Cooper’s 
house. The officers were of average size, wearing civilian clothing with police 
jackets.  Although some of the officers were wearing Nomex hoods to conceal 
their identity, the officer who approached Horn did not have his weapon drawn. 
Horn, a woman in her late fifties, reacted to the presence of the officers in a 
calm but worried way. Although Horn’s education level was not readily apparent 
from the record, she astutely asked Goetz if he would make her a deal. During 
the approximately six hours that Horn was detained while the officers procured a 
search warrant and then conducted the search, she was given a soda, a hamburger, 
the chance to go to the bathroom, and a blanket.  And, during this time, 
officers questioned Horn only twice; no evidence exists that the questioning 
involved the use of physical punishment.
        Although 
the record does not reflect whether Horn was present at the suppression hearing, 
the record does reflect that Horn was present at the trial where the motion for 
suppression was reurged and again denied.[8]  
Thus, the trial court had the opportunity to view Horn’s characteristics, 
including her age and maturity level.  The trial court had the opportunity 
to observe Horn’s demeanor and general intelligence range.  The trial 
court also had the opportunity to observe Goetz’s and Rogers’s demeanor, 
volume of voice, appearance, and credibility.
        Based 
on the totality of the circumstances, we hold that Horn was not coerced nor 
under duress when she consented to the search.  See Vargas, 18 
S.W.3d at 254. Cf. Hunter, 102 S.W.3d at 311 (holding State failed to 
meet its burden in establishing voluntariness of consent by clear and convincing 
evidence where State asked arresting officer only one question about consent); Moss 
v. State, 878 S.W.2d 632, 643 (Tex. App.—San Antonio 1994, pet. ref’d) 
(holding State did not meet burden of proof with clear and convincing evidence 
on voluntariness of consent where appellant was not given Miranda 
warnings or advised of his right to refuse consent and was arrested with guns 
pointed at him and five-year-old daughter).  Deferring, as we must, to the 
trial court’s credibility determinations and to the historical facts 
explicitly found by the trial court when it denied Horn’s motion to suppress, 
we cannot hold that the trial court abused its discretion by concluding that 
Horn’s consent was voluntary or that the State failed to meet its burden of 
establishing the voluntariness of Horn’s consent by clear and convincing 
evidence.
        C. Consent Form Not Vague
        As 
an alternative theory, Horn states that her consent was invalid because the 
consent form she signed was vague.  She argues that the consent form’s 
use of the symbol “/” between vehicle and residence could be interpreted to 
identify the location of the vehicle at the residence and that consent was 
limited to the vehicle itself.  The State responds that the consent form is 
not vague and that, in any event, Horn verbally consented to the search of her 
residence.
        The 
consent to search form involved here stated:
 
I 
Horn, Julia Johnson, having been informed of my Constitutional right not to have 
a search made of the premises/vehicle hereinafter described without a search 
warrant and of my right to refuse to consent to such a search, do hereby 
authorize Mark Goetz # 1903, an agent with the S.T.O.P. Narcotics Task Force, 
and any peace officer(s) assisting him/her to conduct a complete search of the 
premises/vehicle and any and all closed/locked containers found therein, where 
the said premises/vehicle is owned or occupied by me and is described as: 1994 
Mitsubish[i] Mighty Max, green in color, bearing Texas license plate 2KS-B64/418 
Whippoorwill Drive located at: 418 Whippoorwill Drive.

A 
reasonable and common sense interpretation of the form would support the 
position that the parties intended both the vehicle and the residential premises 
to be searched. Moreover, the diagonal mark, or virgule, is commonly used in the 
English language to separate alternatives, as in “and/or,” thus denoting 
conjunctive or disjunctive use as called for under the circumstances. Under 
these circumstances, the conjunctive use is clearly shown where Horn consented 
verbally to the search of her vehicle and her residence. See Smith v. State, 
797 S.W.2d 243, 247 (Tex. App.—Corpus Christi 1990, pet. ref’d) (holding 
consent to search form was effective and evidenced voluntary consent to search 
where consent was also orally given over the phone), cert. denied, 502 
U.S. 875 (1991).
        Moreover, 
Horn does not argue that her verbal consent prior to the search of her 
purse/vehicle and residence was invalid[9] and offers 
no argument as to how the allegedly vague consent form would invalidate her oral 
consent to search.  Because consent need not be in writing, Horn’s 
voluntary oral consent was enough to permit officers to conduct a warrantless 
search of Horn’s vehicle and home. See Jackson v. State, 968 S.W.2d 
495, 499 (Tex. App.—Texarkana 1998, pet. ref’d) (holding Jackson’s oral 
consent valid even if error made written consent invalid). We hold that the 
consent form was not vague and that, in any event, Horn verbally consented to 
the search of both her car and home.
        D. Consent Exception Applied
        As 
a second alternative theory, Horn contends that the consent exception to the 
warrant requirement does not apply when a search is performed pursuant to a 
search warrant.  Horn cites no case law for the proposition that the 
consent exception does not apply in this circumstance.  The State argues 
that consent waives the need for a search warrant.
        The 
law is well-settled that an accused may give her consent to a search and thereby 
waive any irregularities in a search warrant or dispense altogether with the 
necessity for one.  See Bates v. State, 88 S.W.3d 724, 727 (Tex. 
App.—Tyler 2002, pet. ref’d) (citing Joslin v. State, 165 Tex. Crim. 
161, 305 S.W.2d 351, 352 (1957); Davidson v. State, 126 Tex. Crim. 572, 
72 S.W.2d 591, 592 (1934)).  It is true that consent to search may not be 
voluntary when given after the accused is shown a search warrant. See 
Doescher v. State, 578 S.W.2d 385, 389 (Tex. Crim. App. [Panel Op.] 1978).  
But, here, Goetz testified that the officers did not have a search warrant when 
Horn consented to the search, nor did they tell Horn they were procuring a 
search warrant.  Consequently, Horn’s consent, given without any 
potentially coercive effect of an impending search warrant, was voluntary and 
sufficed to bring her case within the consent exception to the warrant 
requirement.
        E. Conclusion
        The 
trial court’s denial of Horn’s motion to suppress is sustainable on any of 
the above grounds. We overrule Horn’s first point.
IV. 
Unsupported Argument of a Brady Violation
        In 
her second point, Horn argues that the trial court improperly denied her motion 
for continuance based upon a Brady violation. Her argument is based on 
the premise that an investigation was pending against the confidential informant 
for alleged aggravated sexual assault of a child and harassment. The State 
points out that Horn has cited no authority requiring the State to disclose 
information concerning its investigations of Cooper as Brady material.  
The State argues that the information does not constitute Brady material, 
that Horn was not prejudiced by the court’s ruling, and that disclosure of the 
information would not have resulted in a different outcome at trial.
        A. Standard of Review
        Granting 
or denying any motion for continuance is within the sound discretion of the 
trial court. Wright v. State, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000), cert. 
denied, 531 U.S. 1128 (2001); Janecka v. State, 937 S.W.2d 456, 468 
(Tex. Crim. App. 1996), cert. denied, 522 U.S. 825 (1997). In order to 
establish an abuse of the trial court's discretion, an appellant must show that 
the denial of the motion resulted in actual prejudice.  Wright, 28 
S.W.3d at 532; Janecka, 937 S.W.2d at 468.
        B. Brady Requirements
        It 
is settled law that a defendant's due process rights are violated if he does not 
obtain, upon request, evidence in the State's possession favorable to him 
“where the evidence is material either to guilt or to punishment, irrespective 
of the good faith or bad faith of the prosecution.” Brady, 373 U.S. at 
87, 83 S. Ct. at 1196-97.  But there is no general right to discovery in a 
criminal case, and Brady does not create one. See Weatherford 
v. Bursey, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977). To invoke Brady, 
the accused must present evidence that (1) the prosecution suppressed or 
withheld evidence; (2) this evidence would have been favorable to the accused; 
and (3) this evidence would have been material to the accused's defense. Ex 
parte Kimes, 872 S.W.2d 700, 702-03 (Tex. Crim. App. 1993).
        The 
Brady requirements apply to information that is known to the prosecution 
but unknown to the defense. United States v. Agurs, 427 U.S. 97, 103, 96 
S. Ct. 2392, 2397 (1976); Jackson v. State, 552 S.W.2d 798, 804 (Tex. 
Crim. App. 1976) (holding that prosecutor did not violate duty to disclose 
favorable information when evidence was already available to defense), cert. 
denied, 434 U.S. 1047 (1978). Brady does not require the State to 
produce exculpatory information that it does not have in its possession or that 
is not known to exist. Hafdahl v. State, 805 S.W.2d 396, 399 n.3 (Tex. 
Crim. App. 1990), cert. denied, 500 U.S. 948 (1991), and disavowed in 
part on other grounds, Madden v. State, 799 S.W.2d 683, 686 n.3 (Tex. Crim. 
App. 1990), cert. denied, 499 U.S. 954 (1991); Johnson v. State, 
901 S.W.2d 525, 533 (Tex. App.—El Paso 1995, pet. ref’d).  The State 
does not have a duty to seek out evidence for the defendant’s use. Palmer 
v. State, 902 S.W.2d 561, 563 (Tex. App.—Houston [1st Dist.] 
1995, no pet.).  If the prosecutor opens his files for examination by 
defense counsel, he fulfills his duty to disclose exculpatory evidence. Givens 
v. State, 749 S.W.2d 954, 957 (Tex. App.—Fort Worth 1988, pet. ref’d).  
Also, if the defense counsel actually knew the facts which were withheld, the 
accused is not entitled to relief based on the State’s failure to disclose the 
same facts. Means v. State, 429 S.W.2d 490, 494 (Tex. Crim. App. 1968).  
Furthermore, if the accused received the material in time to put it to effective 
use at trial, his conviction should not be reversed simply because it was not 
disclosed as early as it might or should have been.  United States v. 
McKinney, 758 F.2d 1036, 1050 (5th Cir. 1985).
        C. No Brady Violation Occurred
        Here, 
it appears that the State had knowledge of the Hood County investigations of 
Cooper for sexual assault of a child and harassment. The record demonstrates 
that the State made its file completely open to Horn’s counsel, that Horn’s 
counsel had several opportunities to take the file and look through it at his 
leisure, and that the State provided criminal histories Horn’s counsel 
requested for the suppression hearing.
        Horn 
fails to meet the first Brady element—that the State suppressed or 
withheld evidence.  The State fulfilled its duty to disclose by opening its 
files.  See Givens, 749 S.W.2d at 957.  Because Horn fails to 
meet one of the required Brady elements, her argument fails, and the 
trial court did not abuse its discretion in denying her motion for continuance.  
Thus, we overrule Horn’s second point.
V. 
Legally Sufficient Evidence of Chain of Custody
        In 
her third point, Horn argues that the trial court erred when it denied her 
motion for directed verdict because, according to Horn, there was no evidence 
establishing a chain of custody between Horn and Cooper.  Horn argues that 
her due process and equal protection rights were violated by the State’s 
failure to establish all links in the chain of custody.  The State responds 
that it presented ample evidence establishing a proper chain of custody with 
regard to its drug exhibits and that Horn presented no evidence of tampering.
        A. Standard of Review
        A 
challenge to the denial of a motion for instructed verdict is actually a 
challenge to the legal sufficiency of the evidence.  McDuff v. State, 
939 S.W.2d 607, 613 (Tex. Crim. App.), cert. denied, 522 U.S. 844 (1997); 
Franks v. State, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 2002, no 
pet.).  In reviewing the legal sufficiency of the evidence to support a 
conviction, we view all the evidence in the light most favorable to the verdict 
in order to determine whether any rational trier of fact could have found the 
essential elements of the crime beyond a reasonable doubt. Jackson v. 
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 
55 S.W.3d 608, 612 (Tex. Crim. App. 2001). This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to 
weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  
When performing a legal sufficiency review, we may not sit as a thirteenth 
juror, re-evaluating the weight and credibility of the evidence and, thus, 
substituting our judgment for that of the fact finder. Dewberry v. State, 
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000).
        B. Chain of Custody Established
        Gaps 
in the chain of custody generally go to the weight and credibility of the 
evidence in question, not its admissibility. Lagrone v. State, 942 S.W.2d 
602, 617 (Tex. Crim. App.), cert. denied, 522 U.S. 917 (1997); Alvarez 
v. State, 857 S.W.2d 143, 147 (Tex. App.—Corpus Christi 1993, pet. ref’d).  
Proof of the beginning and end of the chain will support admission of the 
evidence barring any showing of tampering or alteration. Hall v. State, 
13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000), pet. dism’d, 
improvidently granted, 46 S.W.3d 264 (Tex. Crim. App. 2001).
        As 
described above, when Rogers and Cooper met to start the undercover operation, 
Rogers searched Cooper’s vehicle and his person, provided Cooper with marked 
currency for the drug purchase, and fitted Cooper with an audio recording 
device.  Following these initial procedures, Rogers went with Cooper to 
Cooper’s residence.  When Cooper left his residence to purchase the 
drugs, Rogers could not follow him or escort him due to the undercover nature of 
the purchase. Therefore, Rogers videotaped Cooper’s travel to and from 
Horn’s residence.  After Cooper tried to purchase the drugs the first 
time and was unsuccessful, he went back to his house, and Rogers traveled with 
Cooper to McKelvey’s Marina. After Cooper’s second, successful attempt to 
purchase drugs time, he came straight back to his house and gave Rogers the 
methamphetamine he bought.  Then, Horn came to Cooper’s residence, and 
Cooper went outside to retrieve a bag containing marijuana, giving it to Rogers 
as he reentered the house.  At trial, the State offered and admitted 
State’s Exhibits 1 and 4,[10]  the 
methamphetamine and the marijuana, through the testimony of the officer who took 
the exhibits from the drop box to the crime lab.  Consequently, Cooper did 
not identify State’s Exhibit 1 and 4.
        Here, 
the testimony at trial demonstrates that there was legally sufficient evidence 
of the chain of custody. See Garner v. State, 939 S.W.2d 802, 804-06 
(Tex. App.—Fort Worth 1997, pet. ref’d) (holding chain of custody evidence 
sufficient although officer failed to search police informant before she met 
with appellant).  Although Horn emphasizes that Rogers lost sight of Cooper 
and had no reception from the microphone he fitted on Cooper, these facts have 
less significance where Rogers testified that he searched Cooper’s vehicle and 
his person before the drug purchase and that he was with Cooper during every 
intervening moment other than the actual purchases.  Horn’s contention 
that there was no testimony that Cooper did not alter or modify the contents of 
the drugs that were purchased insinuates that the State had the burden to prove 
that there was no tampering. Case law places no such burden on the State. See 
Stoker v. State, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989) (holding appellant 
has burden to show tampering), cert. denied, 498 U.S. 951 (1990), and 
disapproved of on other grounds, Leday v. State, 983 S.W.2d 713 (Tex. 
Crim. App. 1998). Furthermore, Horn’s speculation that Cooper’s criminal 
history provided him the opportunity and motive to tamper with the evidence is 
not supported by the record, nor did she argue this point when objecting to the 
admission of the evidence. See Kingsbury v. State, 14 S.W.3d 405, 407 
(Tex. App.—Waco 2000, no pet.) (stating that theoretical breaches in the chain 
of custody do not affect admissibility of evidence); see also Harnett v. 
State, 38 S.W.3d 650, 661 (Tex. App.—Austin 2000, pet. ref’d) (stating 
that nothing is preserved for review unless complaint on appeal comports with 
trial objection).
        C. Conclusion
        Viewing 
all the evidence in the light most favorable to the verdict, a rational jury 
could have concluded beyond a reasonable doubt that the State established the 
chain of custody between Horn and Cooper. See, e.g., Coleman v. State, 
113 S.W.3d 496, 503 (Tex. App.—Houston [1st Dist.] 2003, pet. 
granted on one point, remaining pet. stricken) (concluding that evidence was 
legally sufficient to support finding that substance contained in bottles seized 
by officer was same substance that chemist tested and identified as PCP); Gill 
v. State, 57 S.W.3d 540, 547 (Tex. App.—Waco 2001, no pet.) (concluding 
from the testimony presented at trial that State established sufficient chain of 
custody); Penley v. State, 2 S.W.3d 534, 539 (Tex. App.—Texarkana 1999, 
pet. ref’d) (same), cert. denied, 530 U.S. 1243 (2000). We overrule 
Horn’s third point.
VI. 
Proper Final Argument
        In 
her final point, Horn avers that the State made an improper argument during 
closing argument, shifting the burden of proof to her.  Specifically, Horn 
complains of the State’s attack on Horn’s point that the quality of the 
investigation lacked, that the main officer in charge of the investigation 
violated his own task force’s procedures regarding using a confidential 
informant, and that the State alluded to Horn’s failure to testify.  The 
State counters that the comments Horn complains of were proper jury argument 
made in response to arguments made by her counsel, and, in the alternative, any 
error was cured by clarifying remarks made by the prosecutor and by instructions 
given in the jury charge.
        A. Standard of Review
        To 
be permissible, the State’s jury argument must fall within one of the 
following four general areas: (1) summation of the evidence; (2) reasonable 
deduction from the evidence; (3) answer to argument of opposing counsel; or (4) 
plea for law enforcement. Felder v. State, 848 S.W.2d 85, 94-95 (Tex. 
Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. 
State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  In order to 
preserve jury argument error for appellate review, the defendant must make an 
objection, request an instruction to disregard, and make a motion for mistrial 
after the instruction to disregard is given. White v. State, 934 S.W.2d 
891, 895 (Tex. App.—Fort Worth 1996, no pet.) (citing Cook v. State, 
858 S.W.2d 467, 473 (Tex. Crim. App. 1993)).
        When 
the trial court sustains an objection and instructs the jury to disregard but 
denies a defendant’s motion for a mistrial, the issue is whether the trial 
court erred in denying the mistrial. Faulkner v. State, 940 S.W.2d 308, 
312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en banc op. on reh’g).  
Its resolution depends on whether the court’s instruction to disregard cured 
the prejudicial effect, if any, of the improper argument.  Id.  Generally, 
an instruction to disregard impermissible argument cures any prejudicial effect.  
Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. 
denied, 532 U.S. 944 (2001); Dinkins v. State, 894 S.W.2d 330, 357 
(Tex. Crim. App.), cert. denied, 516 U.S. 832 (1995). In assessing the 
curative effect of the court’s instruction to disregard, the correct inquiry 
is whether, in light of the record as a whole, the argument was extreme, 
manifestly improper, injected new and harmful facts into the case, or violated a 
mandatory statutory provision and was thus so inflammatory that the instruction 
to disregard was ineffective. Wesbrook, 29 S.W.3d at 115-16.  If the 
instruction cured any prejudicial effect caused by the improper argument, a 
reviewing court should find that the trial court did not err. Dinkins, 
894 S.W.2d at 357; Faulkner, 940 S.W.2d at 312. Only if the reviewing 
court determines the instruction was ineffective does the court go on to 
determine whether, in light of the record as a whole, the argument had a 
substantial and injurious effect or influence on the jury’s verdict.  Tex. R. App. P. 44.2(b); King 
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).
        B. Response to Argument
        During 
final argument, the State made the following argument:
 
All 
this stuff about Louie Cooper, he got paid, asked for money, so what? I am not 
asking you to convict on what he has told you. Okay? I’m not asking you to do 
that. I’m asking you to convict though on all the other evidence, the 
evidence, from the peace officers. You know, Wayne Rogers is a liar. He is a bad 
investigator. You know, again, let’s change the focus here away from the 
defendant [who is] on trial here and put it on something else. Let’s change 
the focus here. And I don’t know if it’s an attempt to confuse you or what.

 
At 
that point, Horn objected that the State was shifting the burden of proof, and 
the trial court sustained the objection. Then, Horn moved for a mistrial, and 
the trial court overruled her motion. Because Horn failed to request an 
instruction to disregard, error has not been preserved. See State Bar 
of Texas v. Evans, 774 S.W.2d 656, 658 n.6 (Tex. 1989) (holding that failure 
to request a jury instruction constituted waiver of the evidentiary complaint); Gilchrest 
v. State, 904 S.W.2d 935, 938 (Tex. App.—Amarillo 1995, no pet.) (holding 
any right to mistrial was waived where instruction to disregard was not 
requested).
        C. Conclusion
        We 
hold that Horn’s jury argument complaint is not preserved for our review. See 
Nethery v. State, 692 S.W.2d 686, 703 (Tex. Crim. App. 1985), cert. 
denied, 474 U.S. 1110 (1986). We overrule Horn’s fourth point.
VII. 
Conclusion
        Having 
overruled all of Horn’s points, we affirm the trial court’s judgment.
 
 
                                                          SUE 
WALKER
                                                          JUSTICE

 
PANEL 
A:   CAYCE, C.J.; LIVINGSTON and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
April 1, 2004

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).
3.  
For some unknown reason, the recording device did not produce a recording.
4.  
Goetz was dressed in civilian clothing and wearing a windbreaker labeled 
“Police.” He was armed but did not have his weapon drawn. The other officers 
were wearing clothing similar to Goetz’s, and approximately half of the six 
were also wearing black Nomex hoods to conceal their identity as undercover 
agents.
5.  
Testimony about the search of Horn’s hamburger stand was excluded at trial 
because that search occurred prior to the time the search warrant was issued, 
and Horn did not consent to the search of her business.
6.  
Although the United States Constitution requires the State to prove the 
voluntariness of consent only by a preponderance of the evidence, the Texas 
Constitution requires the State to show by clear and convincing evidence that 
the consent was freely given. Carmouche, 10 S.W.3d at 331 (citing State 
v. Ibarra, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997)).
7.  
The trial court held the search warrant invalid, so the State attempted to show 
that the search fell within the consent exception to the warrant requirement. See 
Mendoza v. State, 30 S.W.3d 528, 531 (Tex. App.—San Antonio 2000, no 
pet.).
8.  
Because the suppression issue was raised again during trial, we have included 
testimony from both the suppression hearing and the trial in our discussion of 
this issue. See Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.) 
(stating that general rule—consider only evidence adduced at suppression 
hearing—is inapplicable where, as in this case, suppression issue has been 
relitigated by parties pending trial on merits), cert. denied, 519 U.S. 
1043 (1996); McQuarters v. State, 58 S.W.3d 250, 255 (Tex. App.—Fort 
Worth 2001, pet. ref’d).
9.  
Instead, Horn claims in her first point that police unlawfully searched her 
purse before she signed the consent form, but provides no references to the 
record to support her claim.
10.  
State’s Exhibits 5, 6, and 7 were also admitted into evidence. However, since 
they were obtained by the officers during the search of the house, the State is 
not required to establish a chain of custody linking them to Cooper.