Carolyn A. SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–89–263–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1990.

Rehearing Overruled Oct. 4, 1990.

First Amended Rehearing Overruled
Oct. 25, 1990.

David Fast, Odem, for appellant.

Thomas L. Bridges, Dist. Attorney's Office, Sinton, for appellee.

Before BENAVIDES, KENNEDY and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

A jury found Carolyn Smith guilty of unlawful possession of cocaine, and the court sentenced her to sixteen years in the

Texas Department of Corrections. Appellant raises eleven points of error, contending that the trial court erred in overruling her motion to suppress and her motions for new trial, in admitting and excluding certain evidence, and in sustaining the State's objections to the argument of defense counsel. We affirm the judgment of the trial court.

By four points of error, appellant contends that the trial court erred in overruling her motion to suppress evidence, specifically cocaine and the plastic tape cassette box that the cocaine was in and syringes, all which were obtained as the result of a search of the house in which appellant lived. We review the facts relating to the search of the residence as heard by the trial court at the hearing on the motion to suppress.

During the early afternoon of February 27, 1989, Mrs. C.B. Smith, an octogenarian, called the Portland Police Department complaining about drugs and "druggies" in her house and requesting that the police come and remove them. Officer Peters, who took her call, asked her to come to the Police Department and sign a consent to search her house. Officer Peters had one of the other police officers draft a consent to search. Mrs. Smith did not go to the Police Department but instead called again a short time later. Officer Peters again took her call. Mrs. Smith said that her daughter, appellant Carolyn Smith, would not let her out of the house. Mrs. Smith owned the house, and she and appellant both lived at the house.

Fearing for the elderly Mrs. Smith's safety, Detective Cano led a group of five officers to her house to assist her. Detective Cano and Lieutenant Sims were the first police officers at the house. They heard the sound of running persons and doors slamming in the house and saw people running in the house. Based on the telephone calls from Mrs. Smith that there were drug users in the house and that appellant would not let her out of the house and the observations made at the house, Detective Cano and Lieutenant Sims entered the house without a warrant. According to Detective Cano, as he entered the house, he saw appellant in the living room and saw her throw something into a large box. Detective Cano detained appellant and Officer Peters searched the box and discovered a cassette tape box containing what was later determined to be cocaine.

Detective Cano instructed Detective Gonzalez, a female police officer, to frisk appellant. While Detective Gonzalez frisked appellant she overheard appellant say to her mother, Mrs. Smith, something like, "Oh, Mother, how could you do this?" Mrs. Smith responded, saying something to the effect of "I'm tired of it. I just don't want it anymore." Detective Gonzalez then took appellant outside to her patrol car. According to Detective Gonzalez, Mrs. Smith was alert and coherent.

After appellant was hand-cuffed and removed from the house, the officers turned to Mrs. Smith and checked on her. Officer Peters sat Mrs. Smith down on the couch in the living room and asked her if there was anything that they could do for her. According to Officer Peters, Mrs. Smith stated that she was just very nervous. She then read and signed a consent to search form that the police had given her; she did not ask any questions regarding the consent nor did she appear to have any problems understanding it. Officer Peters stated that the other rooms of the house were searched after the consent to search was signed. Two syringes were found in appellant's bedroom.

When Mrs. Smith was questioned during the hearing on the motion to suppress, she could not remember how the police came to be at her house or even that appellant was at her house and arrested at that time. She had no recollection of calling the police. She did identify the consent to search form and her signature on it. She stated that she was sure that she had read it before she signed it; she repeatedly stated that she understood that the consent form meant that the police were allowed to come in and search the house. Toward the end of the hearing and upon questioning by the court regarding whether her daughter was

arrested a month earlier at her house, Mrs. Smith replied, "Well, I don't know." At the time of the hearing, Mrs. Smith was taking five different medications.

Appellant's motion to suppress referred to evidence seized from the residence before and after the consent was signed. Cocaine was seized from the living room after appellant was seen dropping it and before the consent form was signed, and two syringes were seized from appellant's bedroom after the consent form was signed. The trial court overruled the motion to suppress and stated that he found the search to be consensual from the time that the consent was signed. He further stated that in the alternative that the initial search which was made before the consent was signed was one made under exigent circumstances and that based on the telephone calls, the police had oral consent or implied consent to make the initial entry.

All warrantless searches are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. *Wilson v. State*, 621 S.W.2d 799, 803–04 (Tex.Crim.App.1981); *Longoria v. State*, 763 S.W.2d 597, 599 (Tex.App.—Corpus Christi 1988, no pet.); *Dill v. State*, 697 S.W.2d 702, 705 (Tex.App.—Corpus Christi 1985, pet. ref'd). The State has the burden of proving the legality of a warrantless search. *Lalande v. State*, 676 S.W.2d 115, 116 (Tex.Crim.App.1984); *Dill*, 697 S.W.2d at 705.

■ By her first point of error, appellant contends that the consent to search form is ineffective because the officers had an opportunity to obtain a search warrant and that any attempt to obtain the consent of the owner after the officers had entered the house was ineffective. One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search which is conducted pursuant to consent. *Swink v. State*, 617 S.W.2d 203, 210 (Tex.Crim.App.1981) (alternative basis for decision regarding juvenile confessions overruled in *Griffin v. State*, 765 S.W.2d 422, 427 n. 5 (Tex.Crim.App.1989)). The trial court found that the police had either oral or implied consent from Mrs.

Smith as a result of her telephone calls to the police. The police came to the house at the request of Mrs. Smith, who had asked them to remove certain people and drugs from her house. No search warrant was necessary before their entry. Moreover, since the police had oral consent from Mrs. Smith to search her house, there was no need for a warrant; the police prepared a consent to search form instead of a warrant. This consent to search form functioned as a record of the consent given by Mrs. Smith over the telephone. The State, when relying on an executed consent to search form in the absence of a search warrant, must produce clear and convincing evidence that the consent was voluntarily given. *See Paulus v. State*, 633 S.W.2d 827, 850 (Tex.Crim.App.1982) (on motion for rehearing); *Cammon v. State*, 672 S.W.2d 845, 849 (Tex.App.—Corpus Christi 1984, no pet.). Whether consent was voluntary is determined from the totality of the circumstances. *Rumbaugh v. State*, 629 S.W.2d 747, 751 (Tex.Crim.App.1982); *Cammon*, 672 S.W.2d at 849.

■ Although at the hearing Mrs. Smith could not remember calling the police on the day in question, one police officer testified that he received her two telephone calls and another officer testified regarding a conversation between appellant and her mother which indicated that Mrs. Smith called the police. At the hearing, Mrs. Smith identified the consent to search form, identified her signature on that form, read it to the court, and repeatedly advised the court that the consent to search allowed officers to come in and search her house. She admitted that she would not have signed it if she had not understood it. Further, at the time the consent to search was signed, the scene was secure, and the officers had taken care to make sure that Mrs. Smith was comfortable and they explained the consent form to her before she signed it. There is no evidence in the record that the officers coerced or threatened Mrs. Smith or showed any sign of authority in order to get Mrs. Smith to sign the consent to search form. Considering the totality of the circumstances, we find

that the consent form was voluntarily signed. Since consent was given over the telephone and the form was voluntarily signed, we hold that the consent to search form was effective and evidenced the voluntary consent to search given by Mrs. Smith for the searches which occurred before and after the form was signed. We overrule appellant's first point of error.

By her second point of error, appellant contends that the trial court's finding that the search was valid under combination of consent and exigent circumstances is error because the two exceptions are mutually exclusive. Another established exception to the warrant requirement for an entry and search is a one which is conducted when law enforcement officers have reason to believe that a person within is in need of immediate aid. *Winslow v. State*, 742 S.W.2d 801, 804 (Tex.App.—Corpus Christi 1987, pet. ref'd). The burden of proof is on the State to demonstrate that the warrantless entry was justified by an emergency. *Winslow*, 742 S.W.2d at 804. The reasonableness of the emergency is to be judged by the circumstances as they existed at the time the decision was made to enter rather than being affected by whatever condition is found inside. *Id.* A warrantless search must be strictly circumscribed by the exigencies which justify its initiation. *Bass v. State*, 732 S.W.2d 632, 635 (Tex.Crim.App. 1987). In assessing the officer's belief that a warrantless entry was justified by an emergency, an objective standard of reasonableness is applied. *Winslow*, 742 S.W.2d at 804–05.

■ The police performed a search of part of the house before the consent to search form was signed. Although this search could be considered to have been done pursuant to the oral or implied consent given over the telephone, it could also be considered to have been done under exigent circumstances. The police did not wait until after the consent to search form was signed to enter the house because they were fearful for the safety of the elderly Mrs. Smith. The second telephone call, in which Mrs. Smith stated that her daughter would not let her out of the house, follow-

ing a telephone call that there were "druggies" in her house, combined with the activities at the house at the time that the police arrived, were sufficient circumstances to justify the forced entry in aid of the eighty-year-old Mrs. Smith. The circumstances evidence a situation which evolved from one which the police had consent to search a house and were preparing to perform a consensual search to one in which the police were required to render aid in conjunction with performing a consensual search. We find that the consent and exigent circumstances exceptions to the warrant requirement are not mutually exclusive in this case. We hold that such a finding on the part of the trial court was not error, and we overrule appellant's second point of error.

■ By her third point of error, appellant contends that the trial court erred in overruling the motion to suppress because there was sufficient evidence to show that the police should have obtained appellant's consent because she was a resident of the house and present on the premises. We note that appellant's mother, Mrs. Smith, from whom consent was obtained, was also a resident of the house and present on the premises. A parent may give valid consent to search the premises, and the evidence discovered may be admissible against the child. *Cammon*, 672 S.W.2d at 849; *see also Swink*, 617 S.W.2d at 210 (a third party has the authority to consent to a search when he has equal control over and equal use of the premises being searched); *Sorenson v. State*, 478 S.W.2d 532, 534 (Tex.Crim.App.1972). Appellant also argues that obtaining her mother's signature was a continuation of the police subterfuge or, in the alternative, that her mother was not competent to give her consent and any consent was therefore ineffective. As discussed above, the consent was voluntary and therefore effective. We overrule appellant's third point of error.

■ By her fifth point of error, appellant complains that the trial court erred in overruling her motion to suppress because her arrest was unconstitutional and the house was searched after she had been improper-

ly removed from the house. Appellant presents no arguments or authorities regarding her constitutional complaints. Moreover, the evidence was recovered pursuant to a consent search as found by the trial court, and not on a theory of a result of a lawful arrest. Even if she was improperly removed from the house, such would not vitiate the recovery of evidence pursuant to the search by consent. As previously discussed, the search was valid pursuant to Mrs. Smith's consent. We overrule appellant's fifth point of error.

■ Appellant raises five points of error related to the admission or exclusion of evidence during trial. By her fourth point of error, appellant complains that the trial court erred in admitting eyewitness testimony regarding her possession of cocaine because there was sufficient evidence to show that the police could not have seen her in possession of the cocaine. We note initially that appellant did not object at trial to the admission of eyewitness testimony from Detective Cano who stated that he saw appellant drop the cassette tape box which contained the cocaine. Appellant has waived a portion of her point of error regarding the admission of the evidence. *See* Tex.R.App.P. 52(a). Appellant's argument that the evidence should not have been admitted because of sufficient evidence to the contrary is without merit. Evidence is not rendered inadmissible simply because there may be evidence to the contrary. Any evidence to the contrary relates instead to the weight to be given to the admitted evidence. We overrule appellant's fourth point of error.

■ By her sixth point of error, appellant complains that the trial court erred in admitting the plastic cassette container with the controlled substance because it was seized during an illegal search. At trial, the State separately introduced the plastic cassette container and the cocaine substance. Appellant's objection at trial to the admission of both the cocaine and plastic cassette was that the chain of custody had not been properly established. The error presented on appeal must be the same as the objection raised before the trial court. *Pennington v. State,* 697 S.W.2d 387, 390 (Tex.Crim.App.1985). If the error presented at trial is different from the complaint made on appeal, there is no error preserved for review. *Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim.App.1986). Since appellant did not object at trial on the same grounds which she raises on appeal, she has not preserved error, and this point of error is waived. We overrule appellant's sixth point of error.

By her seventh point of error, appellant contends that the trial court erred in sustaining the State's objections which purportedly prevented her from impeaching the police officers with their inconsistent testimony. Appellant's point of error relies on the existence of inconsistent testimony given by the police officers at the hearing on the motion to suppress and the testimony given by the police officers at trial.

Although appellant complains of "grossly divergent testimony from the suppression hearing to the guilt/innocence phase of the trial" and lists three examples of testimony given at trial, she does not point out any testimony given at the suppression hearing which is inconsistent with those examples or any other testimony. In two of her examples, she refers to inconsistencies between the testimony and the police reports; the police reports are neither in evidence nor are they in a bill of exceptions. A review of the record indicates that appellant did not make an effort to bring out the alleged inconsistencies regarding the police reports at trial. Appellant's point of error has no basis in the record. Appellant's seventh point of error is overruled.

In her ninth point of error, appellant contends that the trial court erred when it prevented her from developing the identity and the activity of a possible but unreliable informant. Appellant contends that this mythical informant was working with the police regarding the "invasion" of Mrs. Smith's house. The possible informant to whom appellant refers is Mrs. Smith's neighbor, Rosemary Sullivan. Appellant argues that there was significant testimony regarding discussions between Sullivan and

Officer Peters regarding the presence of drugs in town but that she "was never able to ask questions to develop the predicate for laying the foundation of obtaining testimony regarding the relationship between Ms. Sullivan and any Portland P.D. officers with regard to controlled substances in this case." Appellant does not refer to any portion of the record where she was prevented from asking questions regarding Sullivan's possible involvement.

In fact, the record indicates that appellant was not inhibited in her quest for the mythical informant. Sullivan testified that she did not call the police on the day of the arrest. Officer Peters stated that he knew Sullivan's voice and that she did not call him on the day of the arrest, claiming to be Mrs. Smith. The police dispatcher who was on duty when the telephone calls came from Mrs. Smith also testified that she is familiar with Sullivan's voice over the phone but that she neither remembers talking to Sullivan on the day of the call for assistance nor remembers Sullivan ever calling and claiming to be someone else. Appellant's contention has no basis in the record. We overrule appellant's ninth point of error.

■ By her tenth point of error, appellant contends that the trial court's interference during a line of questioning which, according to appellant, was an attempt to impeach the police officer, was a comment on the weight of the evidence. Appellant's broad complaint regarding the trial court's interruption is distilled to one example in which the trial court prevented appellant from questioning Detective Cano regarding an injunction that Mrs. Smith may have had against some unidentified person. The trial judge stopped the questioning, stating that he did not think that they needed to go into a civil matter, and he questioned the relevancy of the question regarding the injunction. Appellant contended that she wanted to use Detective Cano's prior testimony, given at the hearing on the motion to suppress, regarding the injunction to impeach him. The trial judge stated that he did not know what prior testimony appellant was talking about. A review of the

record shows that Detective Cano's only prior testimony was at the suppression hearing and that his testimony did not contain any references to any injunctions. The determination of whether evidence is relevant to any issue is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim.App.1985) *cert. denied* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1985); *see also Fancher v. State*, 659 S.W.2d 836, 840 (Tex.Crim.App.1983). Since there was no prior testimony which appellant could use for impeachment we find no abuse of discretion on the part of the trial court in determining that appellant's question regarding the supposed prior testimony was not relevant. Appellant also contends that the trial court's interruption greatly prejudiced her before the jury because it constituted a comment on the weight of the evidence. When no objection is made at trial to comments made by the trial court and that objection is raised for the first time on appeal, no error is preserved and we cannot address such a complaint. *See Woods v. State*, 653 S.W.2d 1, 5 (Tex.Crim.App.1982); *Wright v. State*, 776 S.W.2d 763, 766 (Tex.App.—Corpus Christi 1989, pet. ref'd); *see also Martin v. State*, 714 S.W.2d 356, 358 (Tex.App.—Corpus Christi 1986, no pet.). Even if appellant had preserved error, we do not see that the judge's interruption was calculated to prejudice defendant's rights. *See Esquivel v. State*, 506 S.W.2d 613, 616–17 (Tex.Crim.App.1974). Accordingly, we overrule appellant's tenth point of error.

■ By her eighth point of error, appellant contends that the trial court erred when it sustained the State's objection to her attorney's closing argument. She also contends that the trial court's subsequent remarks were a comment on the weight of the evidence. The record indicates that in his closing argument, appellant's attorney referred to the State's failure to bring the police reports into evidence and referred to the contents of the unadmitted reports. The State objected on the grounds that this was not proper argument. The trial court sustained the State's objection. Attorneys

**250**

for both the State and the defense must confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is improper. *Johnson,* 698 S.W.2d at 16. Since the police reports were not in evidence, argument about its specific contents was improper.

Appellant also contends that the judge's remarks made after he sustained the State's objection were comments on the weight of the evidence. Appellant did not object to the comments and has waived any error on appeal. Accordingly, we overrule appellant's eighth point of error.

By her eleventh point of error, appellant contends that the trial court erred in denying, without a hearing her motions for new trial and in not giving both sides an opportunity to prepare for such a hearing. Appellant did not request a hearing on her motions for new trial but left that determination to the court. The record indicates that after appellant's motion for new trial and her "additional" motion for new trial were filed, that the State's attorney asked the court, "We want to set a hearing date to take up these five motions, Judge?" Before the court could respond, appellant's attorney interjected, "I will leave it to the court." The judge then overruled the motions for new trial, stating that there was no required hearing, and that he had read the motions.

Although the record is unclear whether appellant's attorney was leaving the choice of date of the hearing to the judge or whether he was leaving the choice of whether to have a hearing to the judge, it is clear that appellant's attorney did not request a hearing on the motions for new trial. The right to have a hearing on a motion for new trial is an absolute right if that right is asserted within the time specified by law. *See McIntire v. State,* 698 S.W.2d 652, 660 (Tex.Crim.App.1985); *see generally Royal v. State,* 659 S.W.2d 135 (Tex.App.—Beaumont 1983, no pet.). Appellant cannot complain about the denial of her right to a hearing on her motions for new trial when she did not timely assert that right. Accordingly, we overrule appellant's eleventh point of error.

The judgment of the trial court is AFFIRMED.