Julia Johnson Horn v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-520-CR

JULIA JOHNSON HORN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Julia Johnson Horn appeals her convictions for delivery of methamphetamine, possession of methamphetamine, and delivery of marijuana. A jury found Horn guilty and assessed her punishment at confinement for life for each of the methamphetamine convictions and at twenty years’ confinement for the marijuana conviction.  In four points, she contends that (1) the trial court erred when it denied her motion to suppress and, in the alternative, by finding that she gave consent to the police to search her residence; (2) the trial court improperly denied her motion for continuance based upon a 
Brady
(footnote: 2) violation; (3) the evidence is legally insufficient to support her convictions; and (4) the prosecutor made an improper argument in final argument that shifted the burden of proof to her.  We will affirm.

II.  Factual and Procedural Background

In November 2000, the S.T.O.P. Narcotics Task Force arranged an undercover narcotics buy from Horn.  Wayne Rogers, an investigator with the task force, enlisted the help of Louie Cooper, a cooperating individual and Horn’s neighbor.  Cooper called Horn to prearrange a purchase of marijuana and crystal methamphetamine.  Rogers met with Cooper, searched Cooper’s vehicle and his person, provided Cooper with marked currency for the drug purchase, and fitted Cooper with an audio recording device.
(footnote: 3)  Afterwards, they drove to Cooper’s residence on Whippoorwill Drive in Granbury in Hood County and prepared to start the undercover operation.  

Cooper drove across the street to Horn’s driveway and went to her door. Cooper then returned to his home and told Rogers that Horn would not have the drugs for approximately one hour.  Cooper and Rogers left and went to McKelvey’s Marina together while six other officers maintained surveillance on Horn’s residence and the area around it.  Cooper and Rogers returned to Cooper’s residence approximately one hour later, and Cooper went back to Horn’s residence to purchase the drugs.  Cooper purchased a quantity of methamphetamine that was later admitted at trial as State’s Exhibit 1, but Horn said she did not have the marijuana yet.  Following the partial purchase, Cooper came straight back to his house, where Rogers was videotaping Cooper’s travel to and from Horn’s residence, and gave the drugs to Rogers.  About ten minutes later, Horn drove to Cooper’s residence, and Cooper went outside and retrieved a bag containing a green, leafy substance from Horn, admitted at trial as State’s Exhibit 4.  Cooper gave the bag to Rogers when he reentered the house; Rogers was trying to maintain video contact with Horn until she got out of sight.  As soon as Horn returned to her driveway, Rogers notified the agents who were on surveillance at Horn’s residence that Rogers and Cooper’s part of the operation was complete. 

At that point, Cooper and Rogers left the area in Cooper’s vehicle, and Investigator Goetz
(footnote: 4) and other task force officers met Horn in her driveway. Goetz identified himself and the agency he was with and told Horn he was investigating her activities with regard to the distribution of narcotics.  He asked Horn for permission to search her vehicle and her home for any drug paraphernalia or contraband, and she gave both oral and written consent; Rogers did not mention that they were attempting to get a search warrant even before Horn gave her consent.  Goetz’s search of Horn’s purse revealed $1,140 in $20 bills, including some of the marked bills used by Cooper to purchase drugs.  At that point, Goetz read Horn the 
Miranda
 warnings and began recording his conversation with her.  During the conversation, Horn acknowledged that she had more illegal narcotics in her home and asked Goetz about making a deal, which Goetz perceived as further acknowledgment by Horn that she had committed the offense.  While a search warrant was being procured, other officers made a protective sweep of Horn’s home. 

Once the search warrant was obtained, Rogers conducted a search and seized particular evidence in Horn’s residence pursuant to the search warrant and Horn’s written consent.  Rogers seized three containers of drugs from the kitchen, which were admitted into evidence at trial as State’s Exhibits 5, 6, and 7.  A chemist for the Texas Department of Public Safety in the Garland Crime Laboratory testified at trial that he analyzed State’s Exhibits 1, 4, 5, 6, and 7 and that State’s Exhibits 1, 5, and 6 contained methamphetamine, while State’s Exhibits 4 and 7 contained marijuana.  At a pretrial hearing on Horn’s motion to suppress and again at trial, the trial court declared the search warrant invalid because it was not properly issued by a judge who is a licensed attorney but found that the search was properly conducted pursuant to Horn’s consent. A jury convicted Horn upon the above evidence for delivery of methamphetamine, possession of methamphetamine, and delivery of marijuana. This appeal followed.

III.  Effective Consent Given

In her first point, Horn argues that the trial court erred when it denied her motion to suppress and, in the alternative, when it found that she gave consent to the police to search her residence.  Specifically, Horn contends that her consent was involuntary due to duress and coercion from the officers, that the consent form was vague, and that consent is not relevant when a search is performed pursuant to a search warrant.  Based upon these contentions, Horn asserts that she was harmed.  The State responds that the trial court properly denied Horn’s motion to suppress because the State proved by clear and convincing evidence that Horn freely and voluntarily consented to the search.
 A.  Standard of Review

At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
State v. Hunter
, 102 S.W.3d 306, 309 (Tex. App.—Fort Worth 2003, no pet.).  Thus, the trial court may disbelieve any portion of a witness’s testimony, even if the testimony is uncontroverted.  
Ross
, 32 S.W.3d at 855; 
Hunter
, 102 S.W.3d at 309.

In reviewing the trial court’s decision, an appellate court does not engage in its own factual review.  
Romero
, 800 S.W.2d at 543; 
Hunter
, 102 S.W.3d at 309.  Instead, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); 
Hunter
, 102 S.W.3d at 309.  In the absence of explicit findings, we assume that the trial court made whatever appropriate implicit findings the record supports.  
Ross
, 32 S.W.3d at 855-56; 
Carmouche v. State
, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000); 
Hunter
, 102 S.W.3d at 309.  The voluntariness-of-consent issue is a mixed question of law and fact. 
See Vargas v. State
, 18 S.W.3d 247, 253 (Tex. App.—Waco 2000, pet. ref’d); 
Hunter
, 102 S.W.3d at 309.  Because voluntariness is dependent on whether any duress or coercion was placed on the person giving the consent, we must conduct a de novo review—after giving deference to the historical facts—
of whether the State proved by clear and convincing evidence that the consent to search was voluntary
.  
Vargas
, 18 S.W.3d at 253.  Moreover, if 
the trial judge’s decision is correct on any theory of law applicable to the case, we will sustain the trial judge’s decision.  
Ross
, 32 S.W.3d at 855-56; 
Hunter
, 102 S.W.3d at 309.

Here, at the suppression hearing, the State presented the following evidence:  the testimony of officers Rogers and Goetz; the search warrant; and Horn’s written consent.  Horn presented the testimony of Paula Parker, Horn’s employee who described the search the police performed at the hamburger stand,
(footnote: 5) and the testimony of Ron Pendergraft, a private investigator who described the visibility from Cooper’s house and discussed the reliability that is required of a cooperating individual.  Additionally, Horn attempted to impeach Rogers’s testimony.  Based on this evidence, the trial court found that the search warrant was not properly issued but that Horn voluntarily consented to a search of her premises.  Consequently, the trial court denied Horn’s motion to suppress.

B.  Voluntariness of Horn’s Consent

To show that the search was made with the property owner’s consent and thus trigger the consent exception to the warrant requirement, the State must prove by clear and convincing evidence, based on the totality of the circumstances, that the defendant gave consent freely and voluntarily.
(footnote: 6)  
Reasor v. State
, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000);
 Meeks v. State
, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985); 
Hunter
, 102 S.W.3d at 310.
  
If consent is obtained through duress or coercion, whether actual or implied, that consent is not voluntary. 
 Schneckloth v. Bustamonte
, 412 U.S. 218, 248-49, 93 S. Ct. 2041, 2058-59 (1973);  
Allridge v. State
, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991), 
cert. denied
, 510 U.S. 831 (1993)
; 
Hunter
, 102 S.W.3d at 310
.

Some relevant factors in determining the voluntariness-of-consent issue are the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment.  
Reasor
, 12 S.W.3d at 818; 
Hunter
, 102 S.W.3d at 311
.
 Additionally, testimony by law enforcement officers that no coercion was involved in obtaining the consent is evidence of the consent’s voluntary nature. 
Martinez v. State
, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000); 
Hunter
, 102 S.W.3d at 311
.  A police officer’s failure to inform the accused that he can refuse consent is a factor to consider in determining the voluntariness of consent; however, the absence of such information does not automatically render the accused’s consent involuntary.  
Johnson
, 68 S.W.3d at 653; 
Hunter
, 102 S.W.3d at 311
.  Nor is consent rendered involuntary merely because the accused is under arrest. 
 Johnson
, 68 S.W.3d at 653; 
Hunter
, 102 S.W.3d at 311
.  By the same token, consent is not established by showing no more than acquiescence to a claim of lawful authority.  
Carmouche
, 10 S.W.3d at 331; 
Hunter
, 102 S.W.3d at 311
.

Horn’s motion to suppress challenged the warrantless
(footnote: 7) search of her premises under the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution and under Article I, Sections 9, 10, and 19 of the Texas Constitution.  
U.S. Const.
 
amends. I, IV, V, VI, IX, XIV; 
Tex. Const.
 art. I, §§ 9, 10, 19.  Horn raised the validity of the search under the Texas Constitution, so the State was required to prove the voluntariness of Horn’s consent by clear and convincing evidence.  
See Carmouche
, 10 S.W.3d at 331; 
Hunter
, 102 S.W.3d at 311
.

At the suppression hearing, the State questioned Officer 
Goetz extensively concerning Horn’s consent to the search.  Goetz explained that immediately after he met with Horn and told her who he was and his purpose for being there, he asked her for permission to look through her personal belongings, including those in her car and her house.  He told her that she was not under arrest at that point.  Shortly thereafter Horn signed a written consent to search form.  Goetz testified that he did not threaten her to sign the form, did not make any promises to her, did not coerce her in any way, and did not mention the search warrant prior to obtaining her consent; Goetz also confirmed that the consent form informed the signator of the right to refuse to authorize the search.  Goetz also testified that after he found the marked bills in Horn’s purse, he gave her the 
Miranda
 warnings.

The circumstances leading up to the search show that approximately six to eight officers approached Horn in her driveway when she returned from Cooper’s house.  The officers were of average size, wearing civilian clothing with police jackets.  Although some of the officers were wearing Nomex hoods to conceal their identity, the officer who approached Horn did not have his weapon drawn.  Horn, a woman in her late fifties, reacted to the presence of the officers in a calm but worried way.  Although Horn’s education level was not readily apparent from the record, she astutely asked Goetz if he would make her a deal.  During the approximately six hours that Horn was detained while the officers procured a search warrant and then conducted the search, she was given a soda, a hamburger, the chance to go to the bathroom, and a blanket.  And, during this time, officers questioned Horn only twice; no evidence exists that the questioning involved the use of physical punishment.

Although the record does not reflect whether Horn was present at the suppression hearing, the record does reflect that Horn was present at the trial where the motion for suppression was reurged and again denied.
(footnote: 8)  Thus, the trial court had the opportunity to view Horn’s characteristics, including her age and maturity level.  The trial court had the opportunity to observe Horn’s demeanor and general intelligence range.  The trial court also had the opportunity to observe Goetz’s and Rogers’s demeanor, volume of voice, appearance, and credibility.

Based on the totality of the circumstances
, we hold that Horn was not coerced nor under duress when she consented to the search.  
See Vargas
, 18 S.W.3d at 254
.
    
Cf. Hunter
, 102 S.W.3d at 311 (holding State failed to meet its burden in establishing voluntariness of consent by clear and convincing evidence where State asked arresting officer only one question about consent); 
Moss v. State
, 878 S.W.2d 632, 643 (Tex. App.—San Antonio 1994, pet. ref’d) (holding State did not meet burden of proof with clear and convincing evidence on voluntariness of consent where appellant was not given 
Miranda 
warnings or advised of his right to refuse consent and was arrested with guns pointed at him and five-year-old daughter).
  Deferring, as we must, to the trial court’s credibility determinations and to the historical facts 
explicitly found by the trial court when it denied Horn’s motion to suppress, we cannot hold that the trial court abused its discretion by concluding that Horn’s consent was voluntary or that the State failed to meet its burden of establishing the voluntariness of Horn’s consent by clear and convincing evidence.

C.  Consent Form Not Vague

As an alternative theory, Horn states that her consent was invalid because the consent form she signed was vague.  She argues that the consent form’s use of the symbol “/” between vehicle and residence could be interpreted to identify the location of the vehicle at the residence and that consent was limited to the vehicle itself.  The State responds that the consent form is not vague and that, in any event, Horn verbally consented to the search of her residence
.

The consent to search form involved here stated:

I Horn, Julia Johnson, having been informed of my Constitutional right not to have a search made of the premises/vehicle hereinafter described without a search warrant and of my right to refuse to consent to such a search, do hereby authorize Mark Goetz # 1903, an agent with the S.T.O.P. Narcotics Task Force, and any peace officer(s) assisting him/her to conduct a complete search of the premises/vehicle and any and all closed/locked containers found therein, where the said premises/vehicle is owned or occupied by me and is described as:  1994 Mitsubish[i] Mighty Max, green in color, bearing Texas license plate 2KS-B64/418 Whippoorwill Drive located at:  418 Whippoorwill Drive.

A reasonable and common sense interpretation of the form would support the position that the parties intended both the vehicle and the residential premises to be searched.  Moreover, the diagonal mark, or virgule, is commonly used in the English language to separate alternatives, as in “and/or,” 
thus denoting conjunctive or disjunctive use as called for under the circumstances.  Under these circumstances, the conjunctive use is clearly shown where Horn consented verbally to the search of her vehicle and her residence.  
See Smith v. State
, 797 S.W.2d 243, 247 (Tex. App.—Corpus Christi 1990, pet. ref’d) (holding consent to search form was effective and evidenced voluntary consent to search where consent was also orally given over the phone), 
cert. denied
, 502 U.S. 875 (1991)
.

Moreover, Horn does not argue that her verbal consent prior to the search of her purse/vehicle and residence was invalid
(footnote: 9) and offers no argument as to how the allegedly vague consent form would invalidate her oral consent to search. 
 Because consent need not be in writing, Horn’s voluntary oral consent was enough to permit officers to conduct a warrantless search of Horn’s vehicle and home.  
See Jackson v. State
, 968 S.W.2d 495, 499 (Tex. App.—Texarkana 1998, pet. ref’d) (holding Jackson’s oral consent valid even if error made written consent invalid).  We hold that the consent form was not vague and that, in any event, Horn verbally consented to the search of both her car and home.

D.  Consent Exception Applied

As a second alternative theory, Horn contends that the consent exception to the warrant requirement does not apply when a search is performed pursuant to a search warrant.  Horn cites no case law for the proposition that the consent exception does not apply in this circumstance. 
 The State argues that consent waives the need for a search warrant.

The law is well-settled that an accused may give her consent to a search and thereby waive any irregularities in a search warrant or dispense altogether with the necessity for one.  
See Bates v. State
, 88 S.W.3d 724, 727 (Tex. App.—Tyler 2002, pet. ref’d) (citing 
Joslin v. State
, 165 Tex. Crim. 161, 305 S.W.2d 351, 352 (1957); 
Davidson v. State
, 126 Tex. Crim. 572, 72 S.W.2d 591, 592 (1934)).  It is true that consent to search may not be voluntary when given after the accused is shown a search warrant.  
See Doescher v. State
, 578 S.W.2d 385, 389 (Tex. Crim. App. [Panel Op.] 1978).  But, here, Goetz testified that the officers did not have a search warrant when Horn consented to the search, nor did they tell Horn they were procuring a search warrant. 
Consequently, Horn’s consent, given without any potentially coercive effect of an impending search warrant, was voluntary and sufficed to bring her case within the consent exception to the warrant requirement. 

E.  Conclusion

The trial court’s denial of Horn’s motion to suppress is sustainable on any of the above grounds.  We overrule Horn’s first point.

IV.  Unsupported Argument of a 
Brady
 Violation

In her second point, Horn argues that the trial court improperly denied her motion for continuance based upon a 
Brady
 violation.  Her argument is based on the premise that an investigation was pending against the confidential informant for alleged aggravated sexual assault of a child and harassment.  The State points out that Horn has cited no authority requiring the State to disclose information concerning its investigations of Cooper as 
Brady
 material.  The State argues that the information does not constitute 
Brady
 material
, that Horn was not prejudiced by the court’s ruling, and that disclosure of the information would not have resulted in a different outcome at trial.

A.  Standard of Review

Granting or denying any motion for continuance is within the sound discretion of the trial court.  
Wright v. State
, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000), 
cert. denied
, 531 U.S. 1128 (2001); 
Janecka v. State
, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 825 (1997). In order to establish an abuse of the trial court's discretion, an appellant must show that the denial of the motion resulted in actual prejudice.  
Wright
, 28 S.W.3d at 532; 
Janecka
, 937 S.W.2d at 468. 

B.  
Brady
 Requirements

It is settled law that a defendant's due process rights are violated if he does not obtain, upon request, evidence in the State's possession favorable to him “where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.”
 
 
Brady
, 373 U.S. at 87, 83 S. Ct. at 1196-97.  But there is no general right to discovery in a criminal case, and 
Brady
 does not create one. 
See
 
Weatherford v. Bursey
, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977).
 To invoke
 Brady
, the accused must present evidence that (1) the prosecution suppressed or withheld evidence;  (2) this evidence would have been favorable to the accused; and (3) this evidence would have been material to the accused's defense.  
Ex parte Kimes
, 872 S.W.2d 700, 702-03 (Tex. Crim. App. 1993). 

The 
Brady
 requirements apply to information that is known to the prosecution but unknown to the defense.  
United States v. Agurs
, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397 (1976); 
Jackson v. State
, 552 S.W.2d 798, 804 (Tex. Crim. App. 1976) (holding that prosecutor did not violate duty to disclose favorable information when evidence was already available to defense), 
cert. denied
, 434 U.S. 1047 (1978).
  
Brady
 does not require the State to produce exculpatory information that it does not have in its possession or that is not known to exist.  
Hafdahl v. State
, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990), 
cert. denied
, 500 U.S. 948 (1991),
 and disavowed in part on other grounds, Madden v. State
, 799 S.W.2d 683, 686 n.3 (Tex. Crim. App. 1990), 
cert. denied
, 499 U.S. 954 (1991); 
Johnson v. State
, 901 S.W.2d 525, 533 (Tex. App.—El Paso 1995, pet. ref’d).  The State does not have a duty to seek out evidence for the defendant’s use.  
Palmer v. State
, 902 S.W.2d 561, 563 (Tex. App.—Houston [1
st
 Dist.] 1995, no pet.).
  If the prosecutor opens his files for examination by defense counsel, he fulfills his duty to disclose exculpatory evidence.  
Givens v. State
, 749 S.W.2d 954, 957 (Tex. App.—Fort Worth 1988, pet. ref’d).  Also, if the defense counsel actually knew the facts which were withheld, the accused is not entitled to relief based on the State’s failure to disclose the same facts.  
Means v. State
, 429 S.W.2d 490, 494 (Tex. Crim. App. 1968).  Furthermore, if the accused received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might or should have been.  
United States v. McKinney
, 758 F.2d 1036, 1050 (5th
 Cir. 1985).

C.  No 
Brady 
Violation Occurred

Here, it appears that the State had knowledge of the Hood County investigations of Cooper for sexual assault of a child and harassment.  The record demonstrates that the State made its file completely open to Horn’s counsel, that Horn’s counsel had several opportunities to take the file and look through it at his leisure, and that the State provided criminal histories Horn’s counsel requested for the suppression hearing.

Horn fails to meet the first 
Brady
 element—that the State suppressed or withheld evidence.  The State fulfilled its duty to disclose by opening its files. 
See Givens
, 749 S.W.2d at 957.  Because Horn fails to meet one of the required 
Brady
 elements, her argument fails, and the trial court did not abuse its discretion in denying her motion for continuance.  Thus, we overrule Horn’s second point.

V.  Legally Sufficient Evidence of Chain of Custody

In her third point, Horn argues that the trial court erred when it denied her motion for directed verdict because, according to Horn, there was no evidence establishing a chain of custody between Horn and Cooper.  Horn argues that her due process and equal protection rights were violated by the State’s failure to establish all links in the chain of custody.  The State responds that it presented ample evidence establishing a proper chain of custody with regard to its drug exhibits and that Horn presented no evidence of tampering.

A.  Standard of Review

A challenge to the denial of a motion for instructed verdict is actually a challenge to the legal sufficiency of the evidence.  
McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997)
; 
Franks v. State
, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 2002, no pet.).  In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

B.  Chain of Custody Established

Gaps in the chain of custody generally go to the weight and credibility of the evidence in question, not its admissibility.  
Lagrone v. State
, 942 S.W.2d 602, 617 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 917 (1997); 
Alvarez v. State
, 857 S.W.2d 143, 147 (Tex. App.—Corpus Christi 1993, pet. ref’d). Proof of the beginning and end of the chain will support admission of the evidence barring any showing of tampering or alteration.  
Hall v. State
, 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000),
 pet. dism’d, improvidently granted
, 46 S.W.3d 264 (Tex. Crim. App. 2001).

As described above, when Rogers and Cooper met to start the undercover operation, Rogers searched Cooper’s vehicle and his person, provided Cooper with marked currency for the drug purchase, and fitted Cooper with an audio recording device.  Following these initial procedures, Rogers went with Cooper to Cooper’s residence.  When Cooper left his residence to purchase the drugs, Rogers could not follow him or escort him due to the undercover nature of the purchase.  Therefore, Rogers videotaped Cooper’s travel to and from Horn’s residence.  After Cooper tried to purchase the drugs the first time and was unsuccessful, he went back to his house, and Rogers traveled with Cooper to McKelvey’s Marina.  After Cooper’s second, successful attempt to purchase drugs time, he came straight back to his house and gave Rogers the methamphetamine he bought.  Then, Horn came to Cooper’s residence, and Cooper went outside to retrieve a bag containing marijuana, giving it to Rogers as he reentered the house.  At trial, the State offered and admitted State’s Exhibits 1 and 4,
(footnote: 10) the methamphetamine and the marijuana, through the testimony of the officer who took the exhibits from the drop box to the crime lab. Consequently, Cooper did not identify State’s Exhibit 1 and 4.

Here, the testimony at trial demonstrates that there was legally sufficient  evidence of the chain of custody.  
See Garner v. State
, 939 S.W.2d 802, 804-06 (Tex. App.—Fort Worth 1997, pet. ref’d) (holding chain of custody evidence sufficient
 although officer failed to search police informant before she met with appellant).  Although Horn emphasizes that Rogers lost sight of Cooper and had no reception from the microphone he fitted on Cooper, these facts have less significance where Rogers testified that he searched Cooper’s vehicle and his person before the drug purchase and that he was with Cooper during every intervening moment other than the actual purchases. Horn’s contention that there was no testimony that Cooper did not alter or modify the contents of the drugs that were purchased insinuates that the State had the burden to prove that there was no tampering.  Case law places no such burden on the State.  
See Stoker v. State
, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989) (holding appellant has burden to show tampering), 
cert. denied
, 498 U.S. 951 (1990), 
and
 
disapproved of on other grounds, Leday v. State
, 983 S.W.2d 713 (Tex. Crim. App. 1998)
. Furthermore, Horn’s speculation that Cooper’s criminal history provided him the opportunity and motive to tamper with the evidence is not supported by the record, nor did she argue this point when objecting to the admission of the evidence.  
See Kingsbury v. State
, 14 S.W.3d 405, 407 (Tex. App.—Waco 2000, no pet.) (stating that theoretical breaches in the chain of custody do not affect admissibility of evidence); 
see also Harnett v. State
, 38 S.W.3d 650, 661 (Tex. App.—Austin 2000, pet. ref’d) (stating that nothing is preserved for review
 unless complaint on appeal comports with trial objection).

C.  Conclusion

Viewing all the evidence in the light most favorable to the verdict, a rational jury could have concluded beyond a reasonable doubt that the State established the chain of custody between Horn and Cooper.  
See, e.g.,
 
Coleman v. State
, 113 S.W.3d 496, 503 (Tex. App.—Houston [1
st
 Dist.] 2003, pet. granted on one point, remaining pet. stricken) (concluding that evidence was legally sufficient to support finding that substance contained in bottles seized by officer was same substance that chemist tested and identified as PCP); 
Gill v. State
, 57 S.W.3d 540, 547 (Tex. App.—Waco 2001, no pet.) (concluding from the testimony presented at trial that State established sufficient chain of custody); 
Penley v. State
, 2 S.W.3d 534, 539 (Tex. App.—Texarkana 1999, pet. ref’d) (same), 
cert. denied
, 530 U.S. 1243 (2000).  We overrule Horn’s third point.

VI.  Proper Final Argument

In her final point, Horn avers that the State made an improper argument during closing argument, shifting the burden of proof to her.  Specifically, Horn complains of the State’s attack on Horn’s point that the quality of the investigation lacked, that the main officer in charge of the investigation violated his own task force’s procedures regarding using a confidential informant, and that the State alluded to Horn’s failure to testify.  The State counters that the comments Horn complains of were proper jury argument made in response to arguments made by her counsel, and, in the alternative, any error was cured by clarifying remarks made by the prosecutor and by instructions given in the jury charge.

A.  Standard of Review

To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  In order to preserve jury argument error for appellate review, the defendant must make an objection, request an instruction to disregard, and make a motion for mistrial after the instruction to disregard is given.  
White v. State
, 934 S.W.2d 891, 895 (Tex. App.—Fort Worth 1996, no pet.) (citing 
Cook v. State
, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993)).

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for a mistrial, the issue is whether the trial court erred in denying the mistrial.  
Faulkner v. State
, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en banc op. on reh’g).  Its resolution depends on whether the court’s instruction to disregard cured the prejudicial effect, if any, of the improper argument.  
Id.  
Generally, an instruction to disregard impermissible argument cures any prejudicial effect. 
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied,
 532 U.S. 944 (2001); 
Dinkins v. State
, 894 S.W.2d 330, 357 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 832 (1995).  In assessing the curative effect of the court’s instruction to disregard, the correct inquiry is whether, in light of the record as a whole, the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that the instruction to disregard was ineffective.  
Wesbrook,
 29 S.W.3d at 115-16
.  If the instruction cured any prejudicial effect caused by the improper argument, a reviewing court should find that the trial court did not err.  
Dinkins
, 894 S.W.2d at 357;  
Faulkner
, 940 S.W.2d at 312.  Only if the reviewing court determines the instruction was ineffective does the court go on to determine whether, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury’s verdict.  
Tex. R. App. P. 
44.2(b); 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

B.  Response to Argument

During final argument, the State made the following argument:

All this stuff about Louie Cooper, he got paid, asked for money, so what?  I am not asking you to convict on what he has told you.  Okay?  I’m not asking you to do that.  I’m asking you to convict though on all the other evidence, the evidence, from the peace officers.  You know, Wayne Rogers is a liar.  He is a bad investigator.  You know, again, let’s change the focus here away from the defendant [who is] on trial here and put it on something else.  Let’s change the focus here.  And I don’t know if it’s an attempt to confuse you or what.

At that point, Horn objected that the State was shifting the burden of proof, and the trial court sustained the objection.  Then, Horn moved for a mistrial, and the trial court overruled her motion.  Because Horn failed to request an instruction to disregard, error has not been preserved.  
See
 
State Bar of Texas v. Evans
, 774 S.W.2d 656, 658 n.6 (Tex. 1989) (holding that failure to request a jury instruction constituted waiver of the evidentiary complaint); 
Gilchrest v. State
, 904 S.W.2d 935, 938 (Tex. App.—Amarillo 1995, no pet.) (holding any right to mistrial was waived where instruction to disregard was not requested).

C.  Conclusion

We hold that Horn’s jury argument complaint is not preserved for our review.
  See Nethery v. State, 
692 S.W.2d 686, 703 (Tex. Crim. App. 1985), 
cert. denied
, 474 U.S. 1110 (1986).
  We overrule Horn’s fourth point. 

VII.  Conclusion

Having overruled all of Horn’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: April 1, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Brady v. Maryland
, 373 U.S. 83, 83 S. Ct. 1194 (1963).

3:
For some unknown reason, the recording device did not produce a recording. 

4:
Goetz was dressed in civilian clothing and wearing a windbreaker labeled “Police.”  He was armed but did not have his weapon drawn.  The other officers were wearing clothing similar to Goetz’s, and approximately half of the six were also wearing black Nomex hoods to conceal their identity as undercover agents.

5:
Testimony about the search of Horn’s hamburger stand was excluded at trial because that search occurred prior to the time the search warrant was issued, and Horn did not consent to the search of her business. 

6:
Although the United States Constitution requires the State to prove the voluntariness of consent only by a preponderance of the evidence, the Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given.  
Carmouche
, 10 S.W.3d at 331 (citing 
State v. Ibarra
, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997)).

7:
The trial court held the search warrant invalid, so the State attempted to show that the search fell within the consent exception to the warrant requirement.  
See Mendoza v. State
, 30 S.W.3d 528, 531 (Tex. App.—San Antonio 2000, no pet.).

8:
Because the suppression issue was raised again during trial, we have included testimony from both the suppression hearing and the trial in our discussion of this issue.  
See Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.) (stating that general rule—consider only evidence adduced at suppression hearing—is inapplicable where, as in this case, suppression issue has been relitigated by parties pending trial on merits), 
cert. denied
, 519 U.S. 1043 (1996); 
McQuarters v. State
, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref’d).

9:
Instead, Horn claims in her first point that police unlawfully searched her purse before she signed the consent form, but provides no references to the record to support her claim.

10:
State’s Exhibits 5, 6, and 7 were also admitted into evidence.  However, since they were obtained by the officers during the search of the house, the State is not required to establish a chain of custody linking them to Cooper.